789 F.2d 181
 54 USLW 2528, Prod.Liab.Rep.(CCH)P 11,135
 Antonio CIPOLLONE, individually and as Executor of the
Estate of Rose D. Cipollone
v.
LIGGETT GROUP, INC., a Delaware Corporation; Philip Morris
Incorporated, a Virginia Corporation and Loew's
Theatres, Inc., a New York Corporation.
Appeal of LIGGETT GROUP, INC., Appellant in 85-5073.
Appeal of LOEW'S THEATRES, INC., Appellant in 85-5074.
 Nos. 85-5073, 85-5074.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 13, 1986.
Decided April 7, 1986.
As Amended April 18, 1986.
Rehearing and Rehearing In Banc
Denied May 9, 1986.
 
 Alan S. Naar, Paul A. Rowe, Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Woodbridge, N.J., for Liggett Group, Inc.
 Barry L. Shapiro, Charles J. Walsh, Sills Beck Cummis Zuckerman Radin Tischman & Epstein, Newark, N.J., for Loew's Theatres, Inc.
 Michael J. Vassalotti, Brown, Connery, Kulp, Wille, Purnell & Green, Camden, N.J., for Philip Morris Inc.
 Marc Z. Edell (argued), Cynthia A. Walters, Porzio, Bromberg & Newman, P.C., Morristown, N.J., (Alan M. Darnell, Wilentz, Goldman & Spitzer, Woodbridge, N.J., David J. Novack, Budd, Larner, Kent, Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., of counsel), for Rose D. Cipollone and Antonio Cipollone.
 Paul M. Bator (argued), Cambridge, Mass., for appellants.
 Before HUNTER, SLOVITER, Circuit Judges, and GILES,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This case, before the court on the district court's certification pursuant to 28 U.S.C. Sec. 1292(b) (1982), presents the question whether the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. Secs. 1331-1340 (1982) (the "Act"), preempts any or all of the state common law claims brought by appellee Antonio Cipollone and his wife Rose in the district court. Several of the claims in the Cipollones' complaint concern the alleged failure of the defendants, Liggett Group, Inc., Philip Morris Incorporated, Loews Corporation, Loew's Theatres, Inc. ("Lorillard"), to provide an adequate warning of the dangers of the cigarettes that they manufactured and sold. Because these claims implicate the legislatively mandated warning provided in section 1333 of the Act, the answers of Liggett Group, Philip Morris, and Lorillard each included a defense based on the preemptive effect of the Act. The Cipollones responded by filing a motion to strike the preemption defenses. Lorillard, later joined by Philip Morris, then moved for judgment on the pleadings pursuant to Federal Rule Civil Procedure 12(c). Holding that the Act preempted none of the Cipollones' claims, the district court granted the Cipollones' motion to strike the defenses and denied the motion for judgment on the pleadings. Cipollone v. Liggett Group, Inc., 593 F.Supp. 1146, 1171 (D.N.J.1984). On January 21, 1984, this court granted appellants Lorillard and Liggett Group permission to appeal.[1] Because we disagree with the district court's conclusion concerning the preemptive effect of the Act, we will reverse the district court's grant of the motion to strike and will remand the case for further proceedings.
 
 I.
 A. The Complaint
 
 2
 In their complaint, Rose and Antonio Cipollone alleged that Mrs. Cipollone developed lung cancer as a result of smoking cigarettes manufactured and sold by appellants. The complaint, which was originally filed on August 1, 1983, further averred that Mrs. Cipollone began smoking in 1942 and developed lung cancer as a result of her smoking. Mrs. Cipollone died in October 1984, but her husband has continued prosecuting this action, individually and as executor of his wife's estate. Mr. Cipollone is therefore the sole appellee in this case.
 
 
 3
 As observed by the district court, the fourteen-count complaint sets forth claims based on strict liability (Counts 2, 3, and 9), negligence (Counts 4 and 5), breach of warranty (Count 7), and intentional tort (Counts 6 and 8). The Cipollones claimed that the defendants' cigarettes were unsafe and defective (Count 2) and that defendants are subject to liability for their failure to warn of the hazards of cigarette smoking on the basis of negligence (Count 4) or strict liability (Count 3). In addition, the Cipollones asserted, defendants negligently (Count 5) or intentionally (Count 6) advertised their products in a manner that neutralized the warnings actually provided, warnings made meaningless by the addiction created by cigarettes (Count 9). Finally, the complaint stated that the defendants ignored, failed to act upon, and conspired to deprive the public of medical and scientific data reflecting the dangers associated with cigarettes (Count 8).[2]
 
 
 4
 B. The Federal Cigarette and Advertising Labeling Act
 
 
 5
 The Federal Cigarette Labeling and Advertising Act, originally enacted in 1965, was a response to a growing awareness among members of federal as well as state government that cigarette smoking posed a significant health threat to Americans. The original Act required the following warning label on cigarette packages: "Caution: Cigarette Smoking May Be Hazardous to Your Health." 15 U.S.C. Sec. 1333 (1970). Congress changed this warning, by amendment to the Act in 1969, to the following: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health." 15 U.S.C. Sec. 1333 (1976).[3] The Act, as amended in 1970, expressly stated the policy behind the required warning:
 
 
 6
 It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby--
 
 
 7
 (1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and
 
 
 8
 (2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.
 
 15 U.S.C. Sec. 1331 (1982).[4]
 
 9
 The Act also contains a preemption provision, which provides that
 
 
 10
 (a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.
 
 
 11
 (b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
 
 
 12
 15 U.S.C. Sec. 1334 (1982). Confronted with this provision, the district court did not question that the Act prohibits state legislatures from requiring a warning on cigarette packages that alters that provided in section 1333. Nevertheless, after a comprehensive analysis of the Act, the court concluded that section 1334 does not preempt state common law claims such as those that the Cipollones have asserted.
 
 II.
 A. Preemption Principles
 
 13
 The United States Supreme Court has identified several principles for ascertaining congressional intent to preempt state authority. To begin, Congress may preempt state law by express statement. Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Without the aid of express language, a court may find intent to preempt in two general ways. Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). First, a court may determine that Congress intended "to occupy a field" in a given area
 
 
 14
 because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose."
 
 
 15
 Fidelity Federal Savings & Loan Association v. De la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Second, in those instances where Congress has not wholly superceded state regulation in a specific area, state law is preempted "to the extent that it actually conflicts with federal law." Pacific Gas & Electric Co. v. Energy Resources Conservation & Development Commission, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1982). The Court has stated that such conflict arises when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Finally, in applying these principles, a court must be mindful of the overriding presumption that "Congress did not intend to displace state law." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981); see also Rice, 331 U.S. at 230, 67 S.Ct. at 1152.
 
 B. Express Preemption
 
 16
 In applying these principles to the statutory scheme at issue here, we first express our agreement with the district court's conclusion that section 1334 does not provide for express preemption of the Cipollones' state common law claims. See Cipollone, 593 F.Supp. at 1154-55; accord Roysdon v. R.J. Reynolds Tobacco Co., 623 F.Supp. 1189, 1190 (E.D.Tenn.1985); Roysdon v. R.J. Reynolds, No. 3-84-606, slip op. at 2 (E.D.Tenn. Dec. 11, 1985). Because we are constrained by the presumption against preemption, we cannot say that the language of section 1334 clearly encompasses state common law. We find support for this determination in Congress's failure to include state common law explicitly within section 1334, as it has in numerous other statutes.[5] Indeed, in the absence of a preemption provision encompassing state common law, the Supreme Court has relied generally on principles of implied preemption in evaluating whether a statutory scheme preempts state common law. See, e.g., Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). Accordingly, we turn to examining whether congressional intent to preempt the Cipollones' claims may be inferred under the two general principles of implied preemption.
 
 C. Implied Preemption
 
 17
 In pressing their implied preemption arguments in this appeal, each side relies extensively on the legislative history of the Act. As is often the case with legislative history, both sides have succeeded in gleaning passages that bolster their contrary positions. Although we find the legislative history to the Act informative, no materials have come to our attention that we deem wholly dispositive of the issue before us. Even more important, we find the language of the statute itself a sufficiently clear expression of congressional intent without resort to the Act's legislative history. See Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977).
 
 
 18
 Under the principles of implied preemption, we must first determine whether Congress intended "to occupy the field" relating to cigarettes and health to the exclusion of state law product liability actions such as the Cipollones. Our examination of the Act leads us to agree with the district court's statements that "Congress ... intended to occupy a field" and "indicated this intent as clearly as it knew how." Cipollone, 593 F.Supp. at 1164 (emphasis in original). Not only did Congress use sweeping language in describing the preemptive effect of the Act in section 1334, but it expressed its desire in section 1331 to establish "a comprehensive Federal program" in order to avoid "diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health." See Palmer v. Liggett & Myers Tobacco, Inc., 635 F.Supp. 392 (D.Mass. 1984) (Congress has preempted field with respect to cigarette labeling).
 
 
 19
 In determining the scope of this field, we observe that the Cipollones' tort action concerns rights and remedies traditionally defined solely by state law. We therefore must adopt a restrained view in evaluating whether Congress intended to supercede entirely private rights of action such as those at issue here. See Rice, 331 U.S. at 230, 67 S.Ct. at 1152; Cipollone, 593 F.Supp. at 1165-66; see also Silkwood, 104 S.Ct. at 623-24; Florida Avocado Growers, 373 U.S. at 143-44, 83 S.Ct. at 1211. In light of this constraint, we cannot say that the scheme created by the Act is "so pervasive" or the federal interest involved "so dominant" as to eradicate all of the Cipollones' claims. Nor are we persuaded that the object of the Act and the character of obligations imposed by it reveal a purpose to exert exclusive control over every aspect of the relationship between cigarettes and health. See Banzhaf v. F.C.C., 405 F.2d 1082, 1089-91 (D.C.Cir.1968), cert. denied, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969); see also Southern Railway Co. v. Railroad Commission of Indiana, 236 U.S. 439, 446-48, 35 S.Ct. 304, 305-06, 59 L.Ed. 661 (1915). Thus, we look to the extent to which the Cipollones' state law claims "actually conflict" with the Act to ascertain whether they are preempted.
 
 
 20
 The test enunciated by this court for addressing a potential conflict between state and federal law requires us "to examine first the purposes of the federal law and second the effect of the operation of the state law on these purposes." Finberg v. Sullivan, 634 F.2d 50, 63 (3d Cir.1980) (in banc) (citing Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)). As mentioned above, Congress has provided us with an explicit statement of the Act's purposes in section 1331. That statement reveals that the Act represents a carefully drawn balance between the purposes of warning the public of the hazards of cigarette smoking and protecting the interests of national economy. See Banzhaf, 405 F.2d at 1090. Moreover, the preemption provision of section 1334, read together with section 1331, makes clear Congress's determination that this balance would be upset by either a requirement of a warning other than that prescribed in section 1333 or a requirement or prohibition based on smoking and health "with respect to the advertising or promotion" of cigarettes. See 15 U.S.C. Sec. 1334.
 
 
 21
 Having identified the purposes of the Act, we now must evaluate the effect of the operation of state common law claims on these purposes. In so doing, we accept the appellants' assertion that the duties imposed through state common law damage actions have the effect of requirements that are capable of creating "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." See Hines, 312 U.S. at 67, 61 S.Ct. at 404; see also Dawson v. Chrysler Corp., 630 F.2d 950, 962 (3d Cir.1980) (liability under common law has the effect of imposing requirements), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). As the appellants point out, several Supreme Court opinions reflect recognition of the regulatory effect of state law damage claims and their potential for frustrating congressional objectives. See, e.g., Fidelity, 458 U.S. at 156-59, 102 S.Ct. at 3024-25; Chicago & North Western Transportation Co., 450 U.S. at 324-25, 101 S.Ct. at 1133-34; San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).[6] Applying this principle, we conclude that claims relating to smoking and health that result in liability for noncompliance with warning, advertisement, and promotion obligations other than those prescribed in the Act have the effect of tipping the Act's balance of purposes and therefore actually conflict with the Act.
 
 
 22
 Based on the foregoing, we hold that the Act preempts those state law damage actions relating to smoking and health that challenge either the adequacy of the warning on cigarette packages[7] or the propriety of a party's actions with respect to the advertising and promotion of cigarettes. We further hold that where the success of a state law damage claim necessarily depends on the assertion that a party bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages, such claims are preempted as conflicting with the Act.
 
 
 23
 As appellants' counsel conceded at oral argument, it is not necessary at this stage of the litigation for us to identify which of the Cipollones' claims are preempted by the Act. Under 28 U.S.C. Sec. 1292(b), we are obliged to address the order that was certified rather than the controlling question of law framed by the district court.[8] Johnson v. Alldredge, 488 F.2d 820, 822-23 (3d Cir.1973), cert. denied, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974); see, e.g., Murphy v. Heppenstall Co., 635 F.2d 233, 235 n. 1 (3d Cir.1980), cert. denied, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982). The district court's statement of the controlling issue appears to call for a definitive ruling on each of the Cipollones' claims. Nevertheless, we need only decide whether the district court's ruling striking appellants' preemption defenses should be affirmed or reversed.[9] Two principles counsel us to take such an approach. First, a court should avoid a holding of preemption that is premised on a merely potential conflict between state and federal law. See Rice v. Norman Williams Co., 458 U.S. 654, 659, 102 S.Ct. 3294, 3298, 73 L.Ed.2d 1042 (1982). In addition, a court should not grant a motion to strike a defense unless the insufficiency of the defense is "clearly apparent." See May Department Stores Co. v. First Hartford Corp., 435 F.Supp. 849, 855 (D.Conn.1977); Wright & Miller, Federal Practice and Procedure Sec. 1381, at 802 (1969). The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped. See id. at 800-02.
 
 
 24
 Mindful of both of these principles, we deem it appropriate to reverse the order of the district court and remand the case for further development of the claims and theories of the parties. The district court will then be in a position to make informed and definitive rulings on which claims then in contention are preempted.
 
 III.
 
 25
 For the foregoing reasons, we will reverse the order of the district court to the extent that it granted the Cipollones' motion to strike appellants' preemption defenses. We will also remand the case for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable James T. Giles, United States District Judge for the District of Eastern Pennsylvania, sitting by designation
 
 
 [1]
 Liggett Group petitioned for leave to appeal only from the portion of the district court's order granting the Cipollones' motion to strike defenses. See Joint Appendix at A205. Lorillard sought leave to appeal from the entire order, which included a denial of its motion for judgment on the pleadings. See Joint Appendix at A203. Nevertheless, both appellants made clear in their reply brief and at oral argument that they did not challenge the district court's denial of Lorillard's motion for judgment on the pleadings. See Reply Brief of Appellants at 3; Transcript of Oral Argument at 7, 18. We will therefore consider only the district court's grant of the motion to strike
 
 
 [2]
 Counts 1 and 10 through 14 are not pertinent to this appeal
 
 
 [3]
 In 1984, Congress replaced this warning with rotational warnings providing:
 SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
 SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
 SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.
 SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.
 15 U.S.C. Sec. 1333(a)(1) (Supp. II 1984). The 1984 warning, however, has limited relevance here because the complaint contains no allegation that Mrs. Cipollone smoked cigarettes manufactured and sold by any defendant after 1981.
 
 
 [4]
 Congress amended paragraph one of section 1331 in 1984 by adding a reference to warning notices in cigarette advertisements. Paragraph one now provides: "(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes...." 15 U.S.C. Sec. 1331(1) (Supp. II 1984)
 
 
 [5]
 Examples of statutes that include a preemption provision explicitly encompassing state common law include 12 U.S.C. Secs. 1715z-17(d), 1715z-18(e) (Supp. II 1984) (Domestic Housing and International Recovery and Financial Stability Act); 17 U.S.C. Sec. 301(a) (Copyright Act of 1976); and 29 U.S.C. Sec. 1144(a), (c)(1) (1982) (Employee Retirement Income Security Act of 1974)
 It should be noted that just as Congress could have included a reference to preemption of state common law in section 1334, it also could have included a "savings clause" explicitly preserving the continued vitality of state common law, such as that in the Occupational Safety and Health Act of 1970, 29 U.S.C. Sec. 653(b)(4) (1982). Thus, lack of reference to preemption of state common law in section 1334 has significance only because of the presumption against preemption.
 
 
 [6]
 The district court noted that Garmon involved claims based on state statutes, rather than state common law. This distinction does not undermine the significance of Garmon. As the appellants argue, the central inquiry should be whether a state statute or common law rule providing for civil liability is regulatory in its effect. The Garmon Court ruled that a claim for compensation has a regulatory nature and therefore may be preempted by a federal regulatory scheme. Garmon, 359 U.S. at 247-48, 79 S.Ct. at 780-81
 
 
 [7]
 Accord Roysdon, at 1190-91 (1985); Roysdon, slip op. at 3 (Dec. 11, 1985)
 
 
 [8]
 Section 1292(b) provides:
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
 
 
 [9]
 In Johnson, we stated that section 1292(b) "does not speak of the court of appeals deciding a question certified by the district court.... Since under the clear terms of section 1292(b), we are called upon not to answer the question certified but to decide an appeal, we do not find ourselves bound by the District Judge's statement of the issue." 488 F.2d at 822-23