John **FORSTER**, et al., Respondents,

v.

**R.J. REYNOLDS TOBACCO COMPANY, Erickson Petroleum Corporation, d/b/a Holiday Station Stores, Inc., Petitioners, Appellants.**

No. C1–87–2170.

Supreme Court of Minnesota.

April 14, 1989.

James S. Simonson, Minneapolis, and John L. Strauch, William T. Plesac, Cleveland, Ohio, for R.J. Reynolds Tobacco Co.

Mark A. Gwin, Minneapolis, for Erickson Petroleum Corp.

Michael L. Weiner, Minneapolis, for John Forster, et al.

Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., amicus curiae, for American Cancer Society, American Heart Ass'n, American Lung Ass'n, American Public Health Ass'n, and Public Citizen.

Michael V. Ciresi, Roberta B. Walburn, Minneapolis, amicus curiae, for Minnesota Trial Lawyers Ass'n.

Hubert H. Humphrey, III, Atty. Gen., Peter M. Ackerberg, Sp. Asst. Atty. Gen., St. Paul, amicus curiae, for State.

SIMONETT, Justice.

The trial court ruled that plaintiffs' suit claiming cancer from cigarette smoking was barred by federal preemption. The court of appeals reversed. We affirm in part and reverse in part.

Plaintiff John Forster has sued defendant R.J. Reynolds Tobacco Company and Erickson Petroleum Corporation, d.b.a. Holiday Station Stores, Inc., claiming he contracted terminal cancer from smoking Camel cigarettes for 30 years. Mr. Forster alleges he began smoking in 1953 at age 15; that he was persuaded by Reynolds' advertising that cigarette smoking was glamorous and nonhazardous to health;

and that by the time he was convinced smoking was unhealthy, he was addicted, and notwithstanding many attempts to overcome the addiction, he was unable to do so. (Since suit was commenced, Mr. Forster had died and the action is to be converted into one for wrongful death.)

Plaintiffs' complaint alleges counts of strict products liability, breach of warranty, and negligence, plus derivative claims for Mrs. Forster's loss of consortium and for punitive damages. Defendants moved for summary judgment on the grounds that the Federal Cigarette Labeling and Advertising Act (the Act) preempts any state tort claims, and on the further grounds that the complaint fails to state a cause of action under state law for strict products liability. Pretrial discovery was postponed pending disposition of the motion. The trial court granted summary judgment on preemption grounds and did not rule on the other grounds. On appeal, the court of appeals reversed, holding there was no federal preemption. *Forster v. R.J. Reynolds Tobacco Co.*, 423 N.W.2d 691, 696 (Minn.App. 1988). We granted defendants' petition for further review.

Part I of this opinion considers the preemptive implications of the Act. In Part II we apply the conclusions reached in Part I to the various causes of action alleged in plaintiffs' complaint.

## I.

In 1965 Congress enacted the Federal Cigarette Labeling and Advertising Act. 15 U.S.C. § 1331–1339 (Supp. V 1965–69). Section 1333 of the Act stated it was unlawful to manufacture or sell cigarettes which did not have conspicuously on the

package the warning label: "Caution: Cigarette Smoking May be Hazardous to Your Health." In 1970 Congress amended the Act to change the label to: "Warning: The Surgeon General Has Determined that Cigarette Smoking is Dangerous to Your Health."[1] In 1984, the message on the warning label was again escalated.[2] Defendant Reynolds has complied with the Act's warning requirements. It claims that Congress, in fashioning this elaborate warning scheme, has preempted the field of cigarette regulation so that cigarette manufacturers are immune from state tort claims for injuries to health from using their product.

We need, therefore, to examine the federal legislation to determine if Congress, either expressly or impliedly, intended to preempt state tort claims. The section of the 1965 Act, entitled "preemption," stated:

(a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

(c) Except as is otherwise provided in subsections (a) and (b) of this section, nothing in this chapter shall be construed to limit, restrict, expand, or otherwise affect, the authority of the Federal Trade Commission with respect to unfair or deceptive acts or practices in the advertising of cigarettes * * *.

---

1. 15 U.S.C. § 1333 (1970). The 1970 amendment also gave the Federal Trade Commission authority to require the same warning label in cigarette advertising after July 1, 1971. *See* 15 U.S.C. § 1336 (1982). In addition, all cigarette advertising on television and radio was banned after January 1, 1971. *See* 15 U.S.C. § 1335 (1982).

2. Cigarette manufacturers were required to rotate four different warning labels on their packages of cigarettes. The four warnings were:

**SURGEON GENERAL'S WARNING:** Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
 **SURGEON GENERAL'S WARNING:** Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
 **SURGEON GENERAL'S WARNING:** Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.
 **SURGEON GENERAL'S WARNING:** Cigarette Smoke Contains Carbon Monoxide.
15 U.S.C. § 1333(a)(1) (Supp.1984).

15 U.S.C. § 1334 (1965) (amended 1984). In 1970, subparagraph (b) was amended to read:

> (b) No requirement or prohibition based on smoking and health shall be imposed *under State law* with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334(b) (1970) (emphasis added).

Contrary to defendants' contention, we do not think any of the above-quoted language expressly preempts a state common law tort action. The phrase "requirement or prohibition * * * imposed under State law" is too obscure for us to say that it is an express declaration that state common law tort actions are preempted. Express preemption requires Congress to speak plainer.

The issue before us, then, is whether federal preemption is to be implied. Under our system of federalism, it is assumed that Congress in legislating does not intend to hobble the states in their regulation of matters of state concern. *See Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). This state has a vital interest in protecting the health and safety of its citizens. *See, e.g., Pikop v. Burlington N.R.R. Co.,* 390 N.W.2d 743, 753 (Minn.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). Our state constitution affirms the importance of our citizens having legal redress when harmed. Minn. Const. art. I, § 8 ("Every person is entitled to a certain remedy in the laws for all injuries or wrongs * * *.").

Consequently, if federal preemption is to be implied, congressional intent to do so must be clearly inferred, either from the extent of federal involvement or from the scope of the federal interest; and even then the state will be preempted only to the extent that state regulation "actually conflicts" with federal law. *See, e.g., Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). A conflict arises if compliance with both state and federal law is a physical impossibility (not the case here), or if state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* We must determine, then, if allowance of state common law tort actions would frustrate the objectives of the federal Act.

Congress has clearly stated the federal interest in cigarettes and health. The declaration of policy in the Act proclaims the purpose of the legislation is "to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health." The Act goes on to say that the federal program is established so that

> 1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and
>
> 2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331 (Supp. V 1965–69) (amended 1984).

First of all, it seems to us that Congress has decided that even though cigarette smoking is addictive and hazardous to health, cigarettes may be lawfully marketed if labeled as Congress dictates. This policy represents a balance or compromise between the national interest in protecting health by not smoking and the national interest in protecting commerce and the country's tobacco economy. Congress has struck this balance by warning people they should not smoke if they value their health but leaving the decision whether to smoke up to them. In order that "the public may be adequately informed" of the health hazards of smoking, Congress has provided a warning "to that effect." Further, Congress has reserved to itself what this warning will say and where it must be placed.

In other words, Congress has declared its warning is an adequate warning and only its warning need be given. Finally, Congress has said it does not want diverse, nonuniform, and confusing cigarette labeling and advertising regulations.

██ Reynolds argues that this "comprehensive Federal program" preempts any state tort claim based on a duty to warn; further, it bars any state tort based on false or misleading representations or false advertising; and, further, it preempts any state tort claim based on strict products liability for defective manufacture, design, or failure to warn. Reynolds relies on the leading case of *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987), which holds that the federal Act preempts those state tort claims "that challenge either the adequacy of the warning on cigarette packages or the propriety of a party's actions with respect to the advertising and promotion of cigarettes." *Id.* at 187 (citation omitted). Courts from other jurisdictions have followed *Cipollone.*[3]

Because the cigarette manufacturer has complied with the federal duty to warn, a state tort claim for failure to warn must be based on a duty to give a warning different than the warning under federal law. If state claims are allowable, the jury on each state claim reevaluates the federal duty in terms of a state standard of adequacy and assesses tort damages against a manufacturer found to be wanting. This, we think, constitutes a state-imposed regulatory scheme superimposed on the federal scheme. *Cf. San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) (compensatory damages can be "a potent method of governing conduct and controlling policy" and cannot be used "to regulate activities that are potentially subject to the

exclusive federal regulatory scheme"). Here, the state tort claim regulatory scheme would directly conflict with one of the announced purposes of the Act, namely, to avoid "diverse, nonuniform, and confusing" regulations relating to cigarette smoking and health, and would effectively dismantle the federal plan. *See Palmer v. Liggett Group, Inc.,* 825 F.2d 620, 626 (1st Cir.1987). Congressional intent to obviate this dismantlement is further evident in section 1334(b) which says no requirement or prohibition relating to smoking and health shall be imposed under state law with respect to the advertising or promotion of cigarettes.

As we understand plaintiffs and amici,[4] they do not claim that state tort claims based on inadequate warning would not conflict with the federal Act; rather, they argue this conflict is acceptable to Congress, and, in any event, the conflict is incidental in its impact. We disagree.

Plaintiffs cite *Silkwood,* where the United States Supreme Court permitted a state punitive damages claim to be brought even though it conflicted with the federal safety regulatory scheme for nuclear facilities under the Atomic Energy Act. The Court said this "consequence was something that Congress was quite willing to accept." *Silkwood,* 464 U.S. at 256, 104 S.Ct. at 625. In making this statement, however, the Court had in mind an amendment to the law (the Price–Anderson Act), where Congress obviously assumed that persons injured in nuclear accidents were free to pursue state tort remedies, at least those of a compensatory nature. *Id.* at 251–52, 104 S.Ct. at 623. *See also Gryc v. Dayton–Hudson Corp.,* 297 N.W.2d 727 (Minn.), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980) (where this court observed that the Flammable Fabrics Act had been amended to expressly confirm that a

---

3. Three other federal courts of appeal have followed *Cipollone,* namely, *Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230 (6th Cir.1988); *Stephen v. American Brands, Inc.,* 825 F.2d 312 (11th Cir.1987); and *Palmer v. Liggett Group, Inc.,* 825 F.2d 620 (1st Cir.1987). Also in accord is *Dewey v. Brown & Williamson Tobacco Corp.,* 542 A.2d 919, 225 N.J.Super. 375 (1988).

4. We have received amicus briefs from the State of Minnesota, American Cancer Society, American Heart Association, American Lung Association, American Public Health Association, Public Citizen, and Minnesota Trial Lawyer's Association.

pajama manufacturer's compliance with federal consumer safety rules did not relieve the manufacturer of liability at common law or under state statute). Reynolds, on the other hand, cites *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), where the Court held that a state action for polluting Lake Champlain was impliedly preempted by the Clean Water Act. Our reading of these cases and others persuades us that each case turns on the particular legislative history involved.

We find nothing in the legislative history of the Labeling Act and its amendments which tells us Congress thought that state tort claims could be maintained when in actual conflict with the federal law. This, too, has been the conclusion of the other courts which have looked at the legislative history. *See, e.g., Palmer*, 825 F.2d at 623 (legislative history of the Act contains "contradictory, even self-serving language"). The best indication of congressional intent, we think, is what Congress said in the statute. Congress said it wanted to avoid diverse, nonuniform, and confusing regulations. This statement of intent is at odds with plaintiffs' claim that Congress contemplated a diversity of conflicting state regulations coexisting with the federal regulatory scheme, or that Congress intended its warning to be a minimal warning to which a state could add further requirements.[5]

We hold, therefore, that state tort claims based on a state-imposed duty to warn are impliedly preempted. In this connection, it should be noted that the Act does not preclude cigarette manufacturers from adver-

tising and promoting their product. When they do so, they are not required to expand on the federal warning label; the Act says that label suffices. The Third Circuit in *Cipollone* says "the propriety of a party's actions with respect to the advertising and promotion of cigarettes" is also preempted. *Cipollone*, 789 F.2d at 187. We are unclear what this means. Presumably the Third Circuit had in mind the interplay of section 1334(b); namely, that with respect to advertising and promotion, insofar as it relates to smoking and health, "[n]o requirement or prohibition shall be imposed under State law * * *." As we read the Act, the bedrock on which implied preemption rests is the avoidance of a conflict between a state claim and the federal warning label. Consequently, any state claim that questions the adequacy of cigarette advertising or promotion with respect to smoking and health, or which questions the effect of that advertising or promotion on the federal label, is preempted.[6]

This brings us to Reynolds' next argument that state tort claims based on the "defective condition" of the product are also preempted. This argument assumes the real thrust of plaintiffs' lawsuit is that cigarettes are by nature "defective" and should not be sold, that plaintiffs' claims are really an attempt to outlaw cigarettes by means of state tort actions. To allow state tort actions to be used in this manner, argues Reynolds, would destroy the balance struck by Congress to permit cigarettes to be lawfully sold if they carry the federal warning label; therefore, all state tort claims must be preempted. This argument, we think, claims too much for state

---

**5.** Plaintiffs' and amici's reliance on *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), is misplaced. The D.C. Circuit held that a state tort action for inadequate warning on a pesticide container with a warning label approved by the Environmental Protection Agency was not preempted by the federal law. Although the case has language favorable to our plaintiffs here, the case is distinguishable on several grounds. For example, the pesticide statute said, "A State may regulate the sale or use of any federally registered pesticide * * *." *Id.* at 1541. There was no declaration in the pesticide statute, as in the Cigarette Label-

ing Act, that its purpose was to avoid diverse or nonuniform regulation. Indeed, under the pesticide statute, it was incumbent on the manufacturer to obtain federal approval of its warning label, and, if the label were later found to be deficient—such as in a state tort claim—the manufacturer could petition the EPA to revise the label. *Id.*

**6.** An affirmative misrepresentation with respect to smoking and health which occurs in advertising or promotion would not necessarily implicate the federal label and, therefore, would not be preempted. See discussion in Part II, *infra.*

common law tort actions. Those who urge plaintiffs to sue may hope that as a byproduct of state tort litigation, cigarette manufacturers will go out of business, but the tort actions themselves are not based on any claim that the sale and use of cigarettes is prohibited by law. The state claims are to be resolved under common law principles of liability. Therefore, aside from the duty to warn, there is no federal preemption for claims based on a "defective condition" of the product.

## II.

We need now to discuss preemption with specific reference to each cause of action alleged in plaintiffs' complaint.[7]

*Strict Liability*

■ Plaintiffs' first count alleges defendants, in selling and advertising cigarettes, failed to warn adequately of the adverse health consequences; that they promoted and advertised their product so as to "neutralize" any warning; that their product presented a risk of harm greater than any social utility; that the product was represented as safe for use; that the product was in a defective condition unreasonably dangerous for use; and, hence, defendants "are strictly liable in tort." This rather expansive notion of strict liability is best considered by breaking it down into its components.

First of all, a claim is made in strict liability for failure to warn. Our recent cases have tended to consider failure to warn in product cases as more akin to negligence. *See, e.g., Bilotta v. Kelley Co.,* 346 N.W.2d 616, 622 (Minn.1984). In any event, for reasons already given, we hold that plaintiffs' cause of action for failure to warn is preempted.

■ Count One next claims strict liability for a product defective under a risk-utility analysis. In this state we use a risk-utility balancing test to determine if a product liability claim will lie for a design defect. *See Bilotta,* 346 N.W.2d 616. Reynolds argues that this theory of recovery is preempted because Congress has already made its own risk-utility decision and has allowed cigarettes to be used. This congressional policy decision is not, however, what products liability has in mind. Strict liability assumes the product is useable and asks only if it has been safely designed. So understood, we see no conflict between the state tort action and the Act. We hold that plaintiffs' claim in strict liability for unsafe design is not preempted. The complaint also alleges that defendant's product was in a defective condition unreasonably dangerous for use. It is unclear what plaintiffs have in mind here, but if plaintiffs can prove a defective condition or a defective design—apart from any claim of inadequacy of warning—we see no conflict with the federal Act.[8]

*Misrepresentation*

■ Finally, Count One alleges that the product was represented as safe for use

---

7. In *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir.1986), the issue of preemption arose on plaintiff's motion to strike the defendant's affirmative defense of federal preemption. In denying the motion to strike, the appellate court was not required to apply its general holding to the specific tort claims alleged, leaving that job to the trial court. For the aftermath, see *Cipollone v. Liggett Group, Inc.,* 649 F.Supp. 664 (D.N.J.1986) and *Cipollone v. Liggett Group, Inc.,* 683 F.Supp. 1487 (D.N.J.1988).

Our case comes to us on a grant of summary judgment by the trial court; however, no factual record has been developed and we have basically only the claims as alleged, often quite vaguely, in the complaint. While we consider these claims in light of our ruling on the preemptive effect of the Act, we realize there are gray areas left for the trial court on remand, areas that can only be resolved after plaintiffs have better shaped their causes of action, both in their pleadings and on the facts.

8. The claims of unsafe design and defective condition remain exposed to defendants' asserted defense, yet to be ruled on, that they fail to state a claim for relief under state law. Defendants, for example, point to the discussion of a defective condition for food and drink products in *Restatement (Second) of Torts* § 402A (1965). The *Restatement* takes the position that products like tobacco and whiskey, though addictive and harmful to health, are not "defective," unless foreign substances are added. *Id.* comment i. In any event, the parties have not yet set out their positions on unsafe design and defective condition beyond the pleading stage. All that is before us now and all that we decide is that federal preemption does not apply to these claims.

and was advertised as safe and nonhazardous. This allegation does not really sound in strict liability; although sparsely pleaded, it appears plaintiffs are asserting a cause of action for intentional misrepresentation. The claim, it should be noted, is not for fraudulent concealment of information which would really be a variation of the duty to warn and hence preempted. It is based, rather, on affirmative statements made which are allegedly untrue. Such a claim would not be preempted. If the cigarette manufacturer chooses to provide further information on smoking as it relates to health, these statements, if they meet the requirements for a common law misrepresentation action, would be actionable. *See Davis v. Re–Trac Mfg. Corp.*, 276 Minn. 116, 149 N.W.2d 37 (1967). The action is based on a duty to tell the truth, not on a duty to warn. Misrepresentation is concerned with the truthfulness of what one says; the duty to warn assumes truthfulness and is concerned with how much of what is truthful must be disseminated. Concededly, a false representation (*e.g.*, "smoking will not cause emphysema") conflicts with the federal warning label. But the cause of action, in a preemption sense, does not lie in challenging the adequacy of the federal warning nor in claiming a dilution of that warning, but only in asserting the falsity of what the cigarette manufacturer has chosen to say. To the extent there is a "conflict," it is indirect and self-imposed by the cigarette manufacturer. To find in this situation an implied preemption, we would have to assume that Congress intended the Act to be a license to lie, an assumption both uncharitable to Congress and violative of this state's deep concern for honesty as well as health.

Indeed, it is clear Congress did not intend cigarette advertisers to be free to engage in deceitful advertising practices because it expressly provided in the Act for the Federal Trade Commission to act in such instances. Section 5(b) of the 1965 Act. *Cf. Banzhaf v. FCC*, 405 F.2d 1082 (D.C.Cir.1968), *cert. denied*, 396 U.S. 842, 90 S.Ct. 50, 51, 24 L.Ed.2d 93 (1969). Nor do we think that a state tort action for misrepresentation conflicts with FTC regulation; the two remedies can exist comfortably together. So long as plaintiff does not claim the advertising was deceptive because it did not adequately warn, the claim for misrepresentation is not preempted. Interestingly, in the *Cipollone* trial following remand, a claim for intentional misrepresentation was submitted to the jury. *Cipollone v. Liggett Group, Inc.*, 683 F.Supp. 1487, 1499–1500 (D.N.J.1988).

*Breach of Warranty*

■ The second count simply repeats the allegations of the first count and says they constitute breaches of express and implied warranty. The warranty claims are similar to strict liability; hence, our foregoing analysis governs. To the extent a breach of warranty is based on a duty to warn it is preempted; otherwise it remains viable, subject, of course, to any applicable state law defenses.

By way of illustration, compare a 1961 pre-Act case, *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292 (3d Cir.1961). There the defendant's ads said, "A good cigarette can cause no ills * * *" and "Nose, throat, and accessory organs not adversely affected by smoking Chesterfields." The Third Circuit in *Pritchard* held that a cause of action would lie for breach of express warranty. *Id.* at 296. As indicated in our discussion above on misrepresentation, a similar warranty claim today would not be preempted by the Act.

*Negligence*

■ The third count alleges "defendants were negligent in the manufacture, sale, and advertising" of Camel cigarettes. The pleading does not explain what is meant by a negligent sale, nor by negligent advertising. In any event, the same rulings as above apply. To the extent negligence is claimed to be breach of a duty to warn about the hazards of smoking, it is preempted.

*Other Counts*

■ Plaintiffs' fourth count for Mrs. Forster's loss of consortium is a derivative action and needs no independent discussion. The fifth count is for punitive damages. A

claim for punitive damages in this state is not an independent tort. *See Jacobs v. Farmland Mutual Ins. Co.*, 377 N.W.2d 441, 445 (Minn.1985). If the issue of punitive damages is reached, failure to warn cannot be used as a factor bearing on punitive damages.

■ Finally, the complaint does not allege separate causes of action accruing prior to the enactment of the 1965 Labeling Act. The complaint does allege, however, that Mr. Forster began smoking in 1953, and apparently he claims he became addicted to cigarettes prior to the enactment of the 1965 Labeling Act. The Act does not specifically provide for retroactive preemptive effect. Consequently, we hold that the federal Act does not preempt a pre–1966 claim based on failure to warn. *See Kotler v. American Tobacco Co.*, 685 F.Supp. 15 (D.Mass.1988). Reynolds does not disagree that pre–1966 claims are viable but argues that they suffer from fatal problems of causation and must fail as a matter of state law. Issues of state law defenses are not, however, before us.

Affirmed in part, reversed in part, and remanded for further proceedings.