**TESSMAN SEED & CHEMICAL CO., Rhone-Poulenc Ag Company, et al., Respondents,**

v.

**STATE of Minnesota; Hubert H. Humphrey, III, Attorney General, State of Minnesota; Department of Agriculture, State of Minnesota; and James Nichols, Commissioner, Department of Agriculture, State of Minnesota, Appellants.**

No. C4-90-2125.

Court of Appeals of Minnesota.

March 26, 1991.

Sean E. Hade, Thomas M. Countryman, Jardine, Logan & O'Brien, St. Paul, for Tessman Seed & Chemical Co.

James B. Vessey, Gregory A. Fontaine, Steven M. Christenson, Dorsey & Whitney, Minneapolis, for Rhone–Poulenc Ag Co., et al.

Hubert H. Humphrey, III, Atty. Gen., Paul A. Strandberg, Sp. Asst. Atty. Gen., St. Paul, for State of Minn., Hubert H. Humphrey, III, Atty. Gen., State of Minn., Dept. of Agriculture, State of Minn., and James Nichols, Commissioner, Dept. of Agriculture, State of Minn.

Considered and decided by PARKER, P.J., and HUSPENI and KLAPHAKE, JJ.

## OPINION

HUSPENI, Judge.

In an action which respondents Rhone–Poulenc Ag Company, et al. brought for declaratory and injunctive relief, appellant State of Minnesota claims the trial court erred in granting summary judgment for respondents, dismissing appellant's coun-

terclaims with prejudice and permanently enjoining appellant from seeking to recover penalties or remedies from respondents. We affirm.

### FACTS

On April 28, 1988, a fire broke out at Lund's Farmer Seed and Nursery, a retail seller of pesticides, in St. Cloud, Minnesota. The fire damaged two major areas of the building and released large amounts of pesticides which contaminated the neighboring environment: the ground water, the soil, and the air.

The Minnesota Pollution Control Agency (MPCA) and the Minnesota Department of Agriculture (MDA) Pesticide Enforcement Unit responded immediately to the fire and began making provisions to contain and secure the area to prevent pesticide run-off and increased contamination.

When MDA informed Lund's that Lund's would be liable for the necessary environmental cleanup of the area, Lund's responded that it was financially unable to do so. MDA hired Bay West, Inc. to conduct an investigation of environmental damage and proceed with necessary cleanup and stabilization procedures. The cost of the environmental cleanup operation was approximately $470,000.

MDA then contacted respondents via "requests for response" which contained allegations that respondents were responsible for the environmental damage at Lund's under Minn.Stat. § 18B.01, subd. 23. Respondents are five pesticide manufacturers and one pesticide distributor. The "requests for response" also included requests for remedial action: assuming responsibility for the incident site, formulating and implementing disposal and cleanup plans for the site, analyzing the amount of contamination in the region due to the incident, formulating and implementing a plan to address and clean up any contamination, and reimbursing appellant for all costs which appellant incurred in responding to the incident.

In response to appellant's requests, respondents brought an action for injunctive and declaratory relief to prevent appellant from holding them responsible for the pesticide incident. Appellant answered and counterclaimed, seeking to recover the costs of environmental cleanup on statutory and common law products liability grounds. The trial court granted summary judgment in respondents' favor. Appellant also brought a separate suit against Lund's and the owner of the land upon which the nursery is located. That action is currently pending.

### ISSUES

1. Did the trial court err as a matter of law when it found that respondents, pesticide manufacturers and distributors without title, possession or authority over the pesticide, were not liable as "responsible parties" for a pesticide incident?

2. Did the trial court err when it concluded that respondents did not mishandle the pesticides in violation of Minn.Stat. § 18B.07, subd. 2?

3. Did appellant have standing to bring an action based on a manufacturer's failure to warn?

### ANALYSIS

On appeal from summary judgment, the function of the appellate court is to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). The parties agree that no genuine issue of material fact exists; the facts relating to the fire, the release of pesticides into the environment and the necessary remedies to the situation are basically uncontroverted. Thus, the question which faces this court is whether the trial court properly applied the law when it granted summary judgment.

### I.

Appellant argues that because respondents are pesticide manufacturers and distributors, they are liable as "responsible parties" for a pesticide incident under Minn.Stat. § 18B.01, subd. 23.

Minnesota's Pesticide Control Act defines a pesticide "incident" as a

fire * * * spill, or other event that releases or threatens to release a pesticide accidentally or otherwise, and may cause unreasonable adverse effects on the environment.

Minn.Stat. § 18B.01, subd. 12 (1988). In the event of an "incident," a person is liable as a "responsible party" if

at the time of an incident [the person] has custody of, control of, or responsibility for a pesticide, pesticide container, or pesticide rinsate.

Minn.Stat. § 18B.01, subd. 23 (1988).

Respondents do not dispute that the fire at Lund's constituted an "incident" under section 18B.01, subd. 12. We must determine, therefore, whether respondents had custody or control of or responsibility for the pesticides which caused the damage.

Respondents manufactured and distributed the various pesticides which Lund's carried as inventory in its nursery and feed store. Respondents sold the product to Lund's directly or through a distributor, such as respondent Tessman Seed Co. All respondents had relinquished control and custody of the pesticides upon sale FOB to Lund's. Lund's owned the products at the time of the fire. Thus, at the time of the incident none of the respondents had "custody [or] control of" the pesticides.

The question remains, however, whether respondents may be "responsible" parties. How may one be "responsible"? Appellant argues that manufacturers and distributors are, by nature of their role in the chain of commerce, included as "responsible parties" under the statute. Because the statute defines "responsible party" as one having "responsibility for" the pesticides, we must look elsewhere for an answer to the question of whether respondents in this case are indeed "responsible parties."

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering * * * [t]he circumstances under which it was enact-ed * * * [and] [t]he contemporaneous legislative history.

Minn.Stat. § 645.16(2), (7) (1988). Appellant argues that the legislative history of Minn.Stat. ch. 18B supports a determination that respondents were "responsible" in this case. We cannot agree. While the legislative hearings reflect the legislators' concern about manufacturer responsibility for certain pesticide incidents, the debates focused on situations in which manufacturer liability arose out of its ownership and/or control of the pesticides at the time of the incident.[1] The legislative history upon which appellant relies is inapplicable in this case because respondents no longer exercised ownership or control over the pesticides at the time of Lund's fire. We find no legislative history which clearly includes manufacturers and distributors as "responsible parties."

Next, appellant urges that legislation enacted in 1989 to address fertilizers, agricultural chemical liability and chemical incident reimbursement demonstrates legislative intent to hold respondents liable as "responsible parties." *See* Minn.Stat. ch. 18C, 18D, 18E (Supp.1989). Again, we must disagree. First, we cannot apply the legislative intent supporting 1989 legislation retroactively to demonstrate the intent of the drafters of chapter 18B. Minn.Stat. § 645.21 (1988). Even more importantly, when the legislature enacted chapters 18C, 18D, and 18E it left undisturbed the definition of "responsible party." *See* Minn.Stat. § 18D.01, subd. 10. If the legislature had intended manufacturers and distributors to be responsible parties after they sold the offending products and relinquished custody and control over them, they would have so stated in chapters 18C, 18D and 18E and amended chapter 18B to reflect that intention. The legislature took no such action.

We also find unpersuasive appellant's argument that by exempting farmers and innocent landowners from liability in Minn. Stat. § 18D.101, the legislature intended to hold liable those in the position of respon-

---

**1.** The case giving rise to the legislative debates, *Howe, Inc. v. Brooklyn Center*, No. 758390 (Hennepin County District Court July 10, 1985), in-volved a manufacturer held liable because it owned the pesticides at the time of the incident.

dents here. The fact that manufacturers and distributors may, indeed, be responsible parties while they exercise custody or control over the products in question does not help us in determining whether they are the statutory "responsible parties" after relinquishing that custody and control.

Appellant next argues that we must read the legislative history behind chapter 18B in light of federal statutes and case law which existed when Minnesota enacted chapter 18B. Appellant refers this court to the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. §§ 6921–6926 (1976); the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601–9657 (1980); and the Superfund Amendments and Reauthorization Act (SARA), 42 U.S.C. §§ 9601–9675 (1986), which amended CERCLA. These statutes pertain to "hazardous wastes," defined as a

> solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may
>
> (A) cause * * * illness; or
>
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5) (1976).

The federal statutes apply to disposal, spilling and leakage of hazardous by-products from water treatment plants, solid waste treatment plants, chemical companies and the like, not to a retail product like that involved in the present case. The statutes hold the producer of the waste liable for any resulting damage from a spill or similar incident. This liability is based on ownership and control of the offending waste at the time of the incident.

Federal case law has held manufacturers liable for environmental damage where they maintained authority and control over production, *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1383 (8th Cir. 1989), or over the disposal of waste. *United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726, 743 (8th Cir.

1986). However, the federal cases differ from the present case in two important ways. Manufacturers who were held liable under federal law maintained some level of control over pesticide production and hazardous waste production and disposal at the time the incident caused the damage. Further, the contamination which occurred in the federal cases arose from someone's blatant action; the responsible party exhibited a lack of care by either dumping or abandoning the waste products.

These federal cases illustrate environmental concerns regarding pollution and disposal of materials having no useful purpose. In contrast, the pesticides in the present case are useful products properly put into the stream of commerce, transferred in title from the manufacturer to the distributor to the retailer. The ownership and control of the products transferred with each transaction in the stream of commerce. We conclude that respondents relinquished their responsibility upon sale to the distributors and to Lund's.

While this court shares the environmental concern expressed in the federal cases, we do not read the federal statutory or case law as conclusive authority that Minn. Stat. ch. 18B intended manufacturers and distributors to be liable for all pesticide incidents regardless of who exercised custody and control over or responsibility for the pesticides. While we recognize the substance and merit of the policy considerations which appellant raises, we also realize that the proper forum for policymaking is the legislature and not the court.

## II.

Appellant next claims the trial court erred when it found that respondents did not mishandle the pesticides. We disagree.

> Under Minn.Stat. § 18B.07, subd. 2(a),
>
> A person may not use, store, handle, or dispose of a pesticide, rinsate, pesticide container, or pesticide application equipment in a manner:
>
> *     *     *     *     *     *

(3) that will cause unreasonable adverse effects on the environment.

The statute does not define the word "handle." When the statute does not define specific terminology, we must apply the plain meaning of the word. *See* Minn.Stat. § 645.08(1) (1988) ("Words and phrases are construed according to * * * their common and approved usage"). According to the American Heritage Dictionary of the English Language (1981), "Handle" means "[t]o touch, lift, or turn with the hands * * * [t]o operate * * *; manipulate." We cannot extend this definition to include appellant's proffered meaning: to manufacture or distribute. Reading the word in its statutory context reveals that the drafters created liability based on *causation,* on the actions of a person or entity with relation to chemicals or pesticides which it had in its possession or control.

Respondents were not in a position to "handle" the pesticides. Thus, neither the definition nor the statutory provision imposes liability upon respondents for improper "handling" of the pesticides which the fire released into the environment. A separate action is pending against Lund's and the owner of the land upon which Lund's is located. Issues of "handling" may appropriately be addressed in that case. The trial court properly found no violation here.

### III.

■ Finally, appellant argues that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) does not preempt a common law tort action based on a manufacturer's failure to warn. FIFRA governs the registration and distribution of pesticides in the United States. 7 U.S.C. § 136a–y (1978). Section 136v(a) allows a state to "regulate the sale or use of any federally registered pesticide or device in the state." Section 136v(b), entitled "uniformity," regulates the content of labels.

Preemption may only occur through clear statutory language or clear congressional intent. *See Forster v. R.J. Reynolds Tobacco Co.,* 437 N.W.2d 655, 657–58 (Minn. 1989). Furthermore, federal preemption of

a state law will only occur when the two laws actually conflict. *Id.* at 658. A conflict occurs when compliance with both laws is impossible or when the state law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

As a rule, courts allow preemption of state tort claims in cases where a state law creates a "state imposed regulatory scheme superimposed on the federal scheme." *Forster,* 437 N.W.2d at 659 (holding that state tort claims based on a state-imposed duty to warn are impliedly preempted because they allow a state court to reevaluate the adequacy of the federal duty to warn in each case); *see also Cippollone v. Liggett Group, Inc.,* 789 F.2d 181, 187 (3rd Cir.1986) (federal Cigarette Labeling and Advertising Act preempts state damage actions which challenge the adequacy of the warnings or the propriety of a party's actions in relation to the act, and where the state law claim would create an additional duty to warn beyond the federal requirement); *Lindquist v. Tambrands, Inc.,* 721 F.Supp. 1058, 1062–63 (D.Minn.1989) (federal labeling requirements for tampons preempts state law failure to warn claims). Only one case, *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1541–42 (D.C.Cir.1984), has explicitly allowed state tort claims for damages arising from the failure to warn even though the actions create stricter standards under state law than the federal law required.

In finding that FIFRA preempts appellant's common law claim, the trial court here relied on the section of FIFRA which provides, "such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act." 7 U.S.C. § 136v(b).

Appellant claims respondents failed to warn Lund's adequately of the potential hazards if Lund's improperly stored the pesticides. Even if we were to accept ap-

pellant's argument and were to follow the rationale of *Ferebee* and conclude that a state tort action may be brought on the basis of failure to warn, we would still conclude that appellant is not entitled to relief. In order to have standing to bring a state tort action, appellant would need to have incurred an injury directly arising from respondents' alleged failure to warn appellant. *See Twin Ports Convalescent, Inc. v. Minnesota Bd. of Health,* 257 N.W.2d 343, 346 (Minn.1977); *Envall v. Indep. School Dist. No. 704,* 399 N.W.2d 593, 596 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). Appellant's injury must have arisen from the breach of a duty which respondents owed appellant. In this case it is Lund's, not appellant state, that would have standing to bring suit. Lund's read the labels, stored the pesticide products, and incurred the harm to their nursery. Appellant stepped in to clean up the pesticide incident. Appellant's injury resulted from Lund's inability to pay for the environmental cleanup, not from respondents' failure to warn appellant. Involvement in the cleanup does not grant appellant standing to sue on common law tort grounds.

## DECISION

The trial court did not err in granting summary judgment in favor of respondents on the ground that they were not "responsible parties" under the Pesticide Control Act. Respondents did not mishandle the pesticide in this case, and appellant lacked standing to bring a common law tort action for failure to warn.

Affirmed.