**Louis LEE, Plaintiff,**

v.

**BOYLE–MIDWAY HOUSEHOLD PRODUCTS, INC. and American Home Products Corp., Defendants,**

v.

**ZEP MANUFACTURING COMPANY and National Service Industries, Inc., Third–Party Defendants.**

**Civ. A. No. 90–842.**

United States District Court,
W.D. Pennsylvania.

May 12, 1992.

---

Ted G. Yoakam, Pittsburgh, Pa., for plaintiff.

Richard G. Lewis, Wendy E.D. Smith, Pittsburgh, Pa., Mark W. Lynch, New York City, for defendants.

## MEMORANDUM OPINION

LEWIS, District Judge.

Plaintiff Louis Lee brings the above-captioned case to recover for injuries he sustained when drain cleaner he had used to unclog his kitchen sink erupted while he was bent over the sink. Although plaintiff at one time asserted claims against both the defendants and the third-party defendants, he has settled with the third-party defendants, which will be referred to collectively as "Zep" in this opinion.[1]

Plaintiff asserts three substantive claims—strict products liability, breach of warranty and negligence—against defendants Boyle–Midway Household Products, Inc. ("Boyle–Midway") and American Home Products Corporation ("AHP"). In a separate count of his amended complaint, plaintiff also seeks punitive damages. The parties disagree upon the extent of plaintiff's claims, but a fair reading of plaintiff's amended complaint and other pretrial submissions indicates that, although his primary claim is based upon lack of adequate warnings, he has also asserted that defendants' product is defective in other ways. Pennsylvania law governs his claims.

Boyle–Midway, AHP and Zep have all filed motions for summary judgment. The court will grant those motions.

### I. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be entered when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ Once a defendant has identified portions of the record that demonstrate the absence of a factual dispute as to an essential element of a plaintiff's case, plaintiff must come forward with evidence beyond the pleadings which creates a genuine issue as to that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the facts, the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987).

### II. *AHP's Motion for Summary Judgment*

Initially, the court will consider the motion for summary judgment filed by AHP on March 4, 1992. By order dated March 5, 1992, plaintiff was ordered to respond to defendant's motion for summary judgment by March 30, 1992. At that time, plaintiff was advised that "[f]ailure to respond may result in [his] being deemed not to oppose the motion." Although plaintiff has responded to Boyle–Midway's motion and arguments in great detail, plaintiff has neither filed a document obviously responding to AHP's motion (for example, one titled "response to AHP's motion") nor mentioned AHP or its arguments while re-

---

1. The only claim remaining against Zep is defendants' claim against it for contribution or indemnity should plaintiff recover against them.

sponding to Boyle–Midway's motion. On that basis alone, the court could grant AHP's motion.

In addition, however, AHP has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. That is, plaintiff's claims against AHP (which is Boyle–Midway's parent corporation) are based entirely upon a theory of piercing the corporate veil; AHP has demonstrated that plaintiff cannot advance evidence sufficient to pierce the corporate veil in order to impose liability on it; and plaintiff—because he has failed to respond—has failed to point to any evidence to the contrary. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. AHP's motion will be granted.

### III. *Boyle–Midway's Motion for Summary Judgment*

Because plaintiff has settled his direct claim against third-party defendant Zep, the only claims asserted by plaintiff which remain are those alleged against Boyle–Midway. Boyle–Midway seeks summary judgment against plaintiff on two grounds: spoliation of evidence by plaintiff's counsel and preemption.[2] The court will grant Boyle–Midway's motion on both grounds, with a very limited opportunity for plaintiff to convince the court that it should reconsider its decision as to the first ground.

#### A. Spoliation of Evidence

The first argument Boyle–Midway advances in favor of summary judgment is that plaintiff's counsel did not provide it with, and in fact lost, the can of drain cleaner which plaintiff allegedly used immediately prior to the eruption which injured him. Plaintiff contends that that can contained Lewis Red Devil Lye Drain Opener, which is manufactured by Boyle–Midway. Boyle–Midway argues that it has been severely prejudiced by its inability to examine the can because the identity of the product is at issue.

It is undisputed that, during discovery, Boyle–Midway and Zep requested that plaintiff's counsel produce the containers of two drain cleaners which plaintiff allegedly used immediately prior to the eruption. After several responses indicating that plaintiff's counsel was searching for the containers in his law firm's "evidence area," plaintiff's counsel finally stated, "The plaintiff does not know the whereabouts of the products containers and therefore cannot produce them." Plaintiff's Continuing Answer to Interrogatories of Defendant Boyle–Midway and Response to Requests for Production, attached as Exhibit D to Boyle–Midway's motion for summary judgment.

Apparently, sufficient evidence exists to confirm that the first drain cleaner plaintiff used was manufactured by Zep. Therefore, plaintiff's failure to produce the container of the drain cleaner he initially used in attempting to unclog his kitchen sink is immaterial. Boyle–Midway seeks summary judgment because plaintiff has failed to produce the container of drain cleaner which he used immediately prior to the eruption, however. Plaintiff alleges that the second product he used was Lewis Red Devil Lye Drain Cleaner, which is manufactured by Boyle–Midway, but evidence of record conflicts on that point.

Boyle–Midway suggests that the evidence conflicts in part because, during medical examinations, plaintiff referred to his injuries as having been caused by "Drano." Granting reasonable inferences to the plaintiff, however, the court does not believe that this description of his accident was anything more than the use of a generic term to describe all drain cleaners. The court does not accept that the plaintiff's identifying the products he used as "Drano" creates significant doubt as to whether the product was that manufactured by Boyle–Midway.

Nevertheless, significant questions do exist regarding the source of the samples

**2.** Boyle–Midway also seeks partial summary judgment on plaintiff's claim for punitive damages. Because material facts may be in dispute

on this point, the court will deny the motion for summary judgment to that extent.

provided by plaintiff's counsel. One witness has testified that she removed "a can of the Red Devil lye" from the plaintiff's kitchen and threw it into the trash shortly after the accident. Deposition of Annie R. Weeks, attached as Exhibit 8 to Boyle–Midway's brief in support of summary judgment. Plaintiff's sister, however, has tesfified that she visited plaintiff's home a week after the accident, found the container still there, took it with her and later gave it to plaintiff's counsel. Deposition of J. Anderson, attached as Exhibit 9 to Boyle–Midway's brief in support of summary judgment.

Plaintiff contends that his failure to produce the container has not prejudiced Boyle–Midway because early on in the litigation he provided defense counsel samples of both products allegedly used. In fact, a significant amount of correspondence submitted by plaintiff indicates that counsel for all parties consented to joint testing of the drain cleaner samples which plaintiff provided. Because Boyle–Midway has had the opportunity to examine the product he proffered, plaintiff contends that his later loss of the actual container and remaining contents is immaterial. No evidence of record indicates that the samples plaintiff's counsel provided to defense counsel were taken from the containers which plaintiff's sister gave to plaintiff's counsel, however.[3]

Under Pennsylvania law, in a case in which plaintiff does not allege a defect present in all of defendant's products, a defendant in a products liability case is entitled to summary judgment when loss or destruction of evidence deprives the defense of the most direct means of countering plaintiff's allegations. *Roselli v. General Electric Co.*, 599 A.2d 685 (Pa.Super.1991). Despite plaintiff's arguments, the court must agree that plaintiff's counsel has deprived Boyle–Midway of its most direct defense by losing the container of drain cleaner which plaintiff allegedly used.

In *Roselli*, plaintiffs sued General Electric Co. ("GE") after the glass carafe of their GE coffeemaker shattered in the plaintiff-wife's hand, causing severe burns. Plaintiffs produced the coffeemaker to GE for inspection but failed to produce the fragments of the glass carafe, which had been lost. Evidence unearthed during discovery indicated that, although plaintiffs contended that the coffeemaker was only three years old and had been used only five times, it had been manufactured in 1981 (four years before plaintiffs said it had been purchased) and was quite scorched, indicating frequent use. In addition, GE apparently obtained glass carafes for its coffeemaker from a number of manufacturers, and could not determine the proper party from which to seek contribution and

---

**3.** Plaintiff's counsel protests loudly that he resents the challenge to his integrity implicit in the question raised about this break in the chain of custody. In his reply brief, plaintiff indicates that he will attach a sworn affidavit "that these samples were taken from the containers provided to me by the Plaintiff's sister, and that the photographs taken of the two containers and forwarded to counsel were taken of the products as supplied to counsel by Plaintiff's sister." Plaintiff's reply brief at 9. No affidavit is either attached to the brief or filed separately, however.

Such an omission is not the first in this litigation. Indeed, a litany of omissions by plaintiff's counsel precedes this most recent episode. The record reveals that plaintiff's counsel neglected to timely demand a jury trial, thus resulting in this case being tried to the court. In addition, as noted previously in this opinion, plaintiff's counsel neglected to respond to AHP's motion for summary judgment. Further, the court

notes that plaintiff has often sought leave to amend various pleadings due to omissions and failure to comply with this court's instructions. *See, e.g.,* plaintiff's motion for leave of court to file amended pre-trial narrative statement and plaintiff's motion for leave of court to file second amended pre-trial narrative statement. And, of course, plaintiff's counsel belatedly acknowledged that he lost the can of drain cleaner.

Plaintiff's counsel has thus demonstrated a lack of care and attention to detail which ill becomes a practitioner in federal court. To avoid punishing a litigant for the deficiencies in his attorney's performance, however, this court will reconsider its decision if, within two days of receipt of this opinion, plaintiff's counsel either files an affidavit shoring up the chain of custody or satisfactorily explains why the affidavit is not needed. The order accompanying this opinion will provide as much.

indemnity without examining the carafe itself.

The court in *Roselli* affirmed the trial court's grant of summary judgment, indicating that it agreed with the public policy rationale expressed in an unreported case from the Eastern District of Pennsylvania, *Martin v. Volkswagen of America*, No. 88–8261, 1989 WL 81296 (E.D.Pa. July 13, 1989), and a case from the Court of Common Pleas of Philadelphia County, *Friend v. The Pep Boys*, 3 Phila. 363 (1979), *appeal denied*, 292 Pa.Super. 569, 433 A.2d 539 (1981). The courts in all three cases explained:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*Friend*, 3 Phila. at 371–72, *quoted in Martin*, slip. op. at 2, and *Roselli*, 599 A.2d at 687–88.

Plaintiff contends, correctly, that in each of *Roselli*, *Martin* and *Friend* the plaintiffs against whom summary judgment was entered had failed to provide the very product which they were alleging was defective. Because he provided samples of drain cleaner products to defendants for testing early in the litigation process, and because he is alleging that the Lewis Red Devil Lye Cleaner is defective, plaintiff argues that the *Roselli* holding does not mandate summary judgment in this case.

It is true that Boyle–Midway has had an opportunity to test a sample provided by plaintiff's counsel. Therefore, Boyle–Midway has not been deprived of a chance to pursue that defense if that sample is a sample of the product plaintiff's sister gave to plaintiff's counsel. Once that chain of custody is established, then the parties can debate the identity of the product plaintiff's sister gave to plaintiff's counsel at trial, based upon plaintiff's statements in medical records, the tests done on the samples and the witnesses' testimony. Absent that chain of custody, however, this is a case in which Boyle–Midway has been deprived of a chance to pursue its most direct defense because of loss of evidence by plaintiff's counsel. Under *Roselli*, summary judgment must be entered in favor of Boyle–Midway.[4]

### B. Preemption

Boyle–Midway also argues that plaintiff's claims should be dismissed because they are preempted by the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261 *et seq.* (the "FHSA"). The FHSA sets forth labeling requirements for all substances it classifies as "hazardous." The parties do not dispute that the label on Lewis Red Devil Lye Drain Cleaner comports with the FHSA's labeling requirements. Therefore, Boyle–Midway argues, even if the product plaintiff used was Lewis Red Devil Lye Drain Cleaner, plaintiff's claims are preempted.

■ Whether a state law or claim is preempted is a matter of Congressional intent. *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 185 (3d Cir.1986). Even if Congress did not affirmatively express its intent to preempt some claim, a court may find that a claim is preempted either because Congress intended to occupy the en-

---

**4.** Plaintiff's case here could conceivably be distinguished from *Roselli* and *Martin* because the plaintiffs in those cases did not allege a defect present in all of defendants' like products. In this case, plaintiff is, at least in part, apparently alleging that Boyle–Midway's Lewis Red Devil Lye Drain Cleaner was unsafe for consumer use—a defect which would presumably be present in all cans of it. The issue of whether the product plaintiff used was Lewis Red Devil Lye Drain Cleaner is, however, an issue to which Boyle–Midway must address itself whether or not the alleged defect is one affecting other cans. Testing other containers of Lewis Red Devil will not suffice to help establish this defense.

tire field at issue or because the state claim asserted actually conflicts with federal law. *Id.* There is a presumption against preemption. *Id.* State common law claims can be preempted as easily as state statutes and regulations. *Id.* at 187.

Boyle–Midway paints with too broad a brush in arguing in favor of preemption. Boyle–Midway claims that all of plaintiff's claims should be dismissed if the court rules that the FHSA preempts state common law claims based upon inadequate warnings. This is not the case because, as noted earlier, plaintiff's claims are not solely based upon inadequate warnings. Plaintiff also apparently claims that Boyle–Midway's product is defective in other ways. His claims of a defect in the product clearly would not be preempted by a federal statute establishing labeling requirements. Therefore, even a ruling in Boyle–Midway's favor on this issue will not result in the entire case being dismissed.[5]

That settled, the next task is to examine the extent to which, if at all, plaintiff's warnings claims are preempted by the FHSA. The FHSA provides:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under [the FHSA] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [the FHSA].

15 U.S.C. § 1261, note (b)(1)(A).

### 1. Express Preemption

Clearly, this provision expressly preempts state "regulations." Indeed, plaintiff does not argue otherwise. It does not, however, expressly preempt common-law claims. *See Cipollone,* 789 F.2d at 185 (given the presumption against preemption, lack of reference to state common-law claims means lack of express preemption).

### 2. Implied Preemption

▮▮▮▮ Rather, Boyle–Midway contends that the above-quoted provision, especially when coupled with various statements taken from the FHSA's legislative history, impliedly preempts state common-law claims based upon inadequate warnings. In determining whether a state common-law claim is impliedly preempted, the court should examine whether Congress intended to occupy a field and, if so, the scope of that field. *Id.* at 186. The court must exercise restraint in evaluating whether Congress intended to supersede entirely private causes of action such as state common-law claims. *Id.*

Given the restraint that the court must exercise in this area, I am reluctant to find implied preemption. Statements in the legislative history from the time of the original passage of the FHSA (1960) and subsequent amendments thereto (1966 and 1976) indicate that Congress wanted to enact "national uniform requirements for adequate cautionary labelling," however. H.R.Rep. No. 1861, 86th Cong.2d Sess. 1 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833. Congress believed that it would be "impractical, unnecessary, and undesirable" for labeling requirements to vary from state to state. H.R.Rep. No. 2166, 89th Cong., 2d sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. 4097. It sought to relieve manufacturers from "the potential for increased costs to consumers and the burden on manufacturers" that could result from states being permitted to impose differing labeling requirements. S. Rep. No. 94–251, 94th Cong.2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 1004–05.

Therefore, it appears as if Congress, in passing the FHSA, intended to occupy the

---

5. Indeed, that is precisely why the court is addressing both the preemption issue and the spoliation issue in this opinion. Given that the court will be willing to reconsider its ruling on the spoliation issue to a limited extent, it is most fair to inform the parties at this time that if it reconsiders the decision set forth in part III.A. of this opinion, it will still grant summary judgment as to part, but only part, of plaintiff's case.

field of establishing labeling requirements for hazardous substances. Plaintiff's state common-law claims based upon allegedly inadequate warnings are therefore preempted.

Plaintiff argues that nothing in the legislative history affirmatively indicates that Congress intended to preempt common-law claims. This is true, but, as noted by the United States Court of Appeals for the Third Circuit, "several Supreme Court opinions reflect recognition of the regulatory effect of state law damage claims and their potential for frustrating congressional objectives." *Cipollone*, 789 F.2d at 187. If Congress intended to occupy the field of labeling products such as Lewis Red Devil Lye Drain Cleaner, any state claim which would mandate different labeling requirements would be preempted by the federal requirements set forth in the FHSA.

### 3. Actual Conflict

■ In addition, Boyle–Midway urges that permitting state common-law cases based upon allegedly inadequate warnings to proceed in the face of the FHSA would actually conflict with the FHSA. To determine the validity of this claim, the court must first examine the purposes of the FHSA and then determine the effect plaintiff's claims would have on those purposes. *Cipollone*, 789 F.2d at 187.

The FHSA itself does not contain a section setting forth its purpose. When the House Committee on Interstate and Foreign Commerce reported on the FHSA in 1960, however, it stated that, "The purpose of this bill is to provide *nationally uniform* requirements for *adequate* cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." H.R.Rep. No. 1861, 86th Cong.2d Sess. 1 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833 (emphasis added). A jury verdict or court decision ruling that compliance with the labeling requirements of the FHSA does not provide sufficient warning under state law would frustrate the Congressional purpose of providing nationally uniform requirements. Therefore,

plaintiff's claims based upon allegedly inadequate warnings are preempted because they actually conflict with the FHSA.

Plaintiff contends that there is no actual conflict because the FHSA does not dictate the substance of the warnings which must appear on the labels of hazardous substances but rather merely establishes minimum requirements for labeling. It is plaintiff's position that any additional labeling requirements which would be imposed as a result of a state common-law suit finding liability because of inadequate warnings would not conflict with the FHSA because "the Federal regulations do not dictate the exact content of the warning ultimately chosen by the manufacturer, but rather, the Act simply requires that these areas of concern must be addressed in the [labeling] of the product." Plaintiff's brief at 15.

The debate about whether the FHSA establishes only minimum requirements or sets national standards is apparently not new. In 1976, when Congress decided to expand upon the preemption provision of the FHSA, the Senate Committee on Commerce noted that the FHSA's preemption scheme "is designed to meet the competing interests of those who view Federal requirements as merely minimum standards and those who would opt for uniform national requirements." S. Rep. No. 94–251, 94th Cong.2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 1004. For that reason, Congress permitted states to impose additional labeling requirements if they were able to convince the Consumer Product Safety Commission that (1) such requirements provide "a significantly higher degree of protection from such risk of illness or injury" than do the requirements of the FHSA and (2) such requirements do not unduly burden interstate commerce. 15 U.S.C. § 1261, note (b)(3)(A)(ii). Thus, even if the FHSA only sets forth minimum standards, Congress has established a procedure pursuant to which additional requirements may be imposed. Permitting the assertion of state common-law causes of action which would have the same effect but would not undergo the review mandated by the FHSA would frustrate this scheme.

Plaintiff attacks Boyle–Midway's failure to advance authority directly on point and cites cases from other jurisdictions refusing to hold that the FHSA preempts state-law claims based on allegedly inadequate warnings. In the absence of controlling authority, however, it is Congressional intent, not other court decisions, which must guide this court's decision as to preemption. The court is not bound to follow the cases cited by plaintiff, each of which date back either to 1976—the year in which Congress last amended the FHSA's preemption provision—or prior thereto.

Finally, plaintiff argues that in one other portion of the legislative history of the FHSA, the House Committee on Interstate and Foreign Commerce referred to the assistance that "[j]udicial decisions relating to the duty of manufacturers, distributors, or sellers to warn of the hazards of products" might provide in determining whether a particular product was a "hazardous substance" within the meaning of the FHSA. H.R.Rep. No. 1861, 86th Cong.2d Sess. 1 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2838. Plaintiff claims that this statement indicates that "Congress clearly anticipated using the standards developed under the common law to aid in the definition of sections under the Act. It is apparent, therefore, that the Federal Hazardous Substances Act was intended to be supplementary of and in addition to the common law of negligence and products liability actions." Plaintiff's brief at 14.

This statement could just as easily, however, indicate that Congress intended that court decisions interpreting various entities' duty to warn under the FHSA would provide guidance with regard to determining whether a product was a "hazardous substance." It does not indicate that Congress intended that states could impose labeling requirements in addition to those imposed by the FHSA by virtue of common-law decisions.[6] The court will grant summary judgment on plaintiff's "inadequate warnings" claims based upon preemption.

6. Further, this provision appeared in the legislative history in 1960, before Congress amended

## IV. *Zep's Motion for Summary Judgment*

As noted previously, the only remaining claims against Zep are those asserted against it by Boyle–Midway for contribution or indemnity if Boyle–Midway were found liable to the plaintiff. Because summary judgment is being entered in favor of Boyle–Midway, Zep's motion for summary judgment must also be granted.

the FHSA to expand upon its preemption provision.