**Mark R. SHULTZ, Plaintiff,**

v.

**BARKO HYDRAULICS, INC., A DIVISION OF PETTIBONE CORPORATION, a corporation, Barko Hydraulics, a wholly owned subsidiary of Pettibone Corporation, Barko Hydraulics, a division of Pettibone Corporation, and Reckart Equipment, Inc., a corporation, Defendants.**

**Mark R. SHULTZ, Plaintiff,**

v.

**BARKO HYDRAULICS, INC., A DIVISION OF PETTIBONE CORPORATION, a corporation, and Reckart Equipment, Inc., a corporation, Defendants.**

**Civ. A. Nos. 90–340, 89–2057.**

United States District Court, W.D. Pennsylvania.

April 6, 1993.

---

Timothy E. Finnerty, Arthur Cutruzzula, Walt Nolducci, Maurizi & Cutruzzula, Pittsburgh, PA, for plaintiff.

Donald W. Bebenek, Julie Fields Sweeney, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

### I.  INTRODUCTION

On or about February 23, 1988, plaintiff Mark R. Shultz ("Shultz"), a Pennsylvania resident, was seriously injured at work when the arm of a hydraulic log loader—loaded at the time—snapped and fell on his leg. Shultz filed a complaint alleging strict liability, negligence, and breach of warranty claims against defendant Barko Hydraulics, Inc. ("Barko"), a Minnesota corporation, the manufacturer of the loader, and defendant Reckart Equipment, Inc. ("Reckart"), a West Virginia corporation, the seller or supplier of the loader.  Plaintiff's complaint sounds in strict liability, negligence and breach of warranty.  Jurisdiction is proper under 28 U.S.C. § 1332.

This matter is currently before the Court on defendants' Motion for Summary Judgment.[1]  Defendants contend that when the defendants produced the head weldment portion of the allegedly defective log loader, the plaintiff's expert lost it, thereby depriving defendants of the opportunity to sufficiently examine the product and rebut plaintiff's expert's allegations.

At a February 25, 1993 hearing on this matter, defendants did not materially supplement or alter their legal position and factual allegations from those set forth in their briefs in support of the motion for summary judgment.  Similarly, plaintiff indicated that he too is satisfied with the record as it exists for the purpose of determining who lost the head weldment.

---

1.  Defendant Barko filed its Motion for Summary Judgment and supporting brief on September 14 and 18, 1992, docket no. 17 and docket no. 20 respectively.  Defendant Reckart joined and adopted Barko's motion and brief on January 20, 1993.  Docket no. 32.

Based on the record made by the parties, the evidence is clear and convincing that the head weldment was lost by the plaintiff while in the custody of plaintiff's expert.

Therefore, the sole issue remaining before the Court is whether a defendant is entitled to summary judgment in a products liability action when the allegedly defective product is lost or destroyed by the plaintiff.[2]

## II. DISCUSSION

### A.

Initially, this matter raises a question regarding the permissible basis of a Rule 56 summary judgment. Rule 56(c) requires the entry of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party must demonstrate by affidavits and other materials the existence of specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Rule 56(e) states that a "court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Fed.R.Civ.P. 56(e).

In support of, and in opposition to, the motion at bar, the parties have added to the record five affidavits and over two hundred photographs of the missing head weldment. At the February 25, 1993 evidentiary hearing, I also permitted the parties to adduce the testimony of witnesses, and plaintiff did produce their expert, Mr. John Wiss, a mechanical engineer who has examined the head weldment, to testify that defendants are not unduly prejudiced by the head weldment's absence.

■ Although sworn testimony is not enumerated as one of the evidentiary bases upon which a motion for summary judgment may be decided, it is fairly implied from Rule 56(c)'s reference to the possible "hearing on the motion," and it is well established that trial judges may consider such evidence under Rule 56. *See e.g., American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.,* 752 F.2d 71, 75 n. 2 (3d Cir.1985) (citing *U.S. v. Webber,* 396 F.2d 381, 386 n. 10 (3d Cir.1968); *Stafford v. Electronic Systems and Assoc., Inc.,* 1989 WL 150007 (E.D.Pa. 1989) (court granted summary judgment after considering pleadings, affidavits, briefs, testimony and exhibits submitted at hearing).

### B.

Plaintiff argues that summary judgment should be denied because defendants have not been prejudiced by the loss of the head weldment. Specifically, plaintiff alleges that defendants have had ample time to inspect the head weldment, and *have in fact* performed destructive testing upon the piece. Further, plaintiff avers, enough information about the head weldment exists, including over 200 photographs, to enable the parties' experts to opine regarding the existence *vel non* of a defective condition in the head weldment.

Defendants deny that their experts have performed destructive testing, and insist that without further examination of the head weldment, they are severely prejudiced by their inability to prepare a defense to plaintiff's action. However, defendants' also argue that the mere fact that plaintiff lost the head weldment *ipso facto* entitles them to summary judgment. *See* Defendant Barko's February 26, 1993 Letter to Judge Smith at 2.

---

**2.** Although the substantive law of products liability is governed in this diversity action by the law of Pennsylvania, I consider the question of sanctions for the loss of evidence to be a function of the court's inherent supervisory powers. *See Outley v. City of New York,* 837 F.2d 587, 589–90 (2d Cir.1988); *Campbell Industries v. M/V Gemini,* 619 F.2d 24, 27–28 (9th Cir.1980). Because of the paucity of case law I refer both to state and federal decisions under Fed.R.Civ.P. 26 and 37 for guidance as to sanctions. *See e.g. Jefferson v. Davis,* 131 F.R.D. 522 (N.D.Ill.1990).

In support of their position, defendants cite *Lee v. Boyle–Midway Household Products, Inc.*, 792 F.Supp. 1001 (W.D.Pa.1992) and *Martin v. Volkswagen of America, Inc.*, 1989 WL 81296 (E.D.Pa.1989). The plaintiff in *Martin* sued the defendant auto manufacturer on theories of strict liability, negligence and breach of warranty when a 1984 Audi she was driving allegedly accelerated out of control and crashed, causing her injuries. Sometime prior to the filing of the claim, the allegedly defective Audi was sold and neither plaintiff nor defendants were able to examine it. The court in *Martin* entered summary judgment against the plaintiff, quoting *Friend v. The Pep Boys*, 3 Phila. 363 (1979), *aff'd* 433 A.2d 539 (Pa.Super.1981), wherein the court stated:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

*Id.* at 371–372.

In *Lee*, the plaintiff brought a products liability action against a drain cleaner manufacturer after the drain cleaner he was using to unclog his sink allegedly exploded, injuring him. The defendant moved for summary judgment on the ground that plaintiff's counsel lost the can of drain cleaner which the plaintiff allegedly used. Judge Lewis, then a member of this court, held that under Pennsylvania law, in a products liability case in which the plaintiff alleges a product-specific manufacturing defect, as opposed to a product design defect, the defendant is entitled to summary judgment when loss or destruction of evidence deprives the defense of the most direct means of countering plaintiff's allegations. 792 F.Supp. at 1005 (citing *Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (Pa.Super.1991) *allocatur granted*, 530 Pa. 645, 607 A.2d 255 (1992)) (summary judgment entered in favor of defendant in products liability case where plaintiff inadvertently destroyed allegedly defective product before defendant had opportunity to inspect it).

A cursory review of *Lee, Martin, Friend* and *Roselli* seems at first to support defendants' position. However, those cases are all factually distinguishable from the instant action, and do not compel adoption of the bright line rule suggested by defendants. Unlike the defendants in the *Lee* line of cases, defendants in this case have had possession of the product once already. On February 29, 1988, within one week of the date of accident, defendant Reckart sent the head weldment to defendant Barko. On March 30, 1988, Barko shipped the head weldment to its expert, Dr. Stanley Weiss, who examined the head weldment and performed what defendants allege was non-destructive testing on it. On August 24, 1988, six months after the date of accident, the head weldment was shipped by defendants' expert to plaintiff's counsel.

Accordingly, despite the propriety of a *per se* rule of dismissal in which the product is lost or destroyed *before* the defendant can examine it, this action may not be disposed of simply by holding that products liability cases must be dismissed without considering prejudice to the parties whenever it appears that one party appears to have lost the product. Dismissal or summary judgment in such actions is a defensive mechanism used by courts to protect the party who would otherwise be forced to prepare its case without ever having had the opportunity to inspect the very subject matter of the case. Such a drastic measure, although available, *see Thurman–Bryant Elec. Supply Co. v. Unisys Corp.*, 1991 WL 222256 (Tenn.Ct.App.1991) should not be used simply to penalize every party who loses the product.[3]

---

**3.** The closely related doctrine of spoliation of evidence does not provide the grounds for defendants' motion for summary judgment. Under certain circumstances, a party's unexplained failure to produce relevant evidence authorizes an inference or presumption unfavorable to that

■ In the case at bar, the existence of genuine issues of material fact regarding the effect of the head weldment's absence upon defendants' case preclude summary judgment.

First, the parties dispute whether defendants' experts have or have not already performed destructive testing upon the head weldment. At the February 25 evidentiary hearing, plaintiff's expert, John Wiss, again stated that when he examined the head weldment, he saw evidence of prior burning or filing. If, as plaintiff implies, these marks suggest that defendants' experts' did in fact perform destructive testing, the prejudicial effect of the head weldment's absence would presumably diminish. Second, even if defendants have *not* yet performed destructive testing, plaintiff nevertheless disputes whether such testing is a *sine qua non* of Barko's and Reckart's defense. Again, plaintiff's expert insists that given the information available to the parties now, including over 200 photographs, that it is possible to determine the cause of the underlying accident. Certainly, the fact that plaintiff is not the only party with first-hand knowledge of the head weldment distinguishes the instant action from similar cases where one party never inspected the evidence but was asked to work exclusively from photographs. *See e.g., American Family Ins. Co. v. Village Pontiac GMC, Inc.,* 223 Ill.App.3d 624, 166 Ill.Dec. 93, 96, 585 N.E.2d 1115, 1118 (Ill.App. 2 Dist.1992).

This Court cannot in this matter weigh the available physical evidence in order to deliver an expert opinion whether defendants are so unduly prejudiced as to warrant the entry of summary judgment.[4] However, as Judge Huyett noted in *Mensch v. Bic Corp.,* 1992 WL 236965 (E.D.Pa.1992), by exercising sound discretion regarding the admission of evidence, and with appropriate instructions to the jury, the Court can alleviate whatever prejudicial effect the spoliation of evidence may have upon the defendants where the facts surrounding spoliation are not sufficiently clear to dismiss the case altogether.

## III. CONCLUSION

■ Where highly relevant physical evidence is lost or destroyed after the opposing party has had that evidence available to it for discovery purposes prior to trial, a district court should not reflexively enter summary judgment against the party who lost the evidence. Rather, the moving party must first show either that the party who lost the evidence did so fraudulently or intentionally, or that the absence of the evidence unduly prejudices the moving party to such an extent that preparation of its case is rendered impossible. Because genuine issues of material fact concerning prejudice to defendants remain, the case must proceed, albeit with the understanding that the defendants may move for special jury instructions regarding the spoliation issue or other appropriate relief. An appropriate order follows.

### ORDER

AND NOW, this 6th day of April, 1993, a hearing having been held on this matter, and consistent with the foregoing opinion defendants Barko Hydraulics' and Reckart Equipment's Motion for Summary Judgment is hereby DENIED.

party. However, "it must appear that there has been an actual suppression or withholding of the evidence; no unfavorable inference arises when the circumstances indicate that the [evidence] has been lost or accidentally destroyed...." *Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 96 (3d Cir.1983). *See also Universe Tankships, Inc. v. United States,* 388 F.Supp. 276, 286 (E.D.Pa. 1974), *aff'd* 528 F.2d 73 (3d Cir.1975) ("Mere negligence resulting in destruction of evidence" is not enough to require the drawing of an adverse inference.) Instantly, there is no evidence that plaintiff's expert intentionally or fraudulently lost or destroyed the head weldment.

4. Defendants did not produce at the summary judgment stage any evidence to counter plaintiff's expert's testimony, preferring to rely on the *per se* prejudice theory.