**Robert L. BEIL, Executor of the Estate of Carrie Beil, deceased; Robert L. Beil, Executor of the Estate of David Earl Beil, deceased; Terry L. Beil, Individually and as the wife of Robert L. Beil; and Robert L. Beil, Individually and as the husband of Terry L. Beil, Plaintiffs,**

**State Automobile Mutual Insurance Company, Plaintiff–Appellant,**

v.

**LAKEWOOD ENGINEERING AND MANUFACTURING COMPANY; Zayre Corporation; The TJX Companies, Inc.; and Ames Department Stores, Inc., Defendants–Appellees.**

No. 92–6702.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 10, 1993.

Decided Jan. 31, 1994.

MILES, Senior District Judge.

This case arises out of a house fire in Kentucky. The house was insured by State Automobile Mutual Insurance Company ("State Auto"). State Auto obtained subrogation rights and filed this lawsuit against the manufacturer of a heater believed to have caused the fire. The manufacturer moved for summary judgment based on Rule 37 of the Federal Rules of Civil Procedure because the heater had been discarded by a fire examiner who was hired by State Auto's adjusting agency. The district court granted the manufacturer's motion and dismissed State Auto's claim pursuant to Rule 37 because it held that State Auto was responsible for the loss of an important piece of evidence. State Auto has appealed the dismissal. For the reasons stated below, this court reverses the decision of the district court.

## FACTS

On November 22, 1989, the house of David and Carrie Beil caught fire, resulting in the destruction of the house and the death of the Beils. The house was insured by State Auto. State Auto paid the insurance claim filed by the Beils' estate and, therefore, acquired subrogation rights.

Shortly after the fire, State Auto contacted Kirby and Associates, an independent adjusting firm, to adjust the loss. On November 27, 1989, Kirby and Associates hired Donald Yuellig, a fire investigator, to investigate the scene of the fire and determine its origin. Yuellig is the sole proprietor and only employee of D.P. Yuellig Fire Protection Consultants. He has done work for Kirby and Associates for five or six years.

Yuellig has vast experience in the "fire" business. He served for 32 years in the Cincinnati Fire Department. While serving in the Cincinnati Fire Department, he served as Firefighting Company Officer, Commander of the Fire Department Emergency Rescue Service, and as Assistant Superintendent for Fire Prevention. Since retiring from the

Before: GUY and RYAN, Circuit Judges; and MILES, Senior District Judge.*

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

Cincinnati Fire Department in 1980, Yuellig has acted as a fire consultant. He investigates approximately 50–60 fires per year on a contract basis for various insurance companies, attorneys, and manufacturers. He has advised municipalities on their civil service examinations for fire department promotions. In addition, he belongs to several professional societies.

Yuellig examined the fire scene. He also spoke with the Beils' son and daughter-in-law and local police and fire authorities. On December 1, 1989, the police allowed him to take possession of several items that had been in the house at the time of the fire. These items were a Lakewood Electric Oil Filled Radiator Heater, its supply cord, and an extension cord. Yuellig photographed the heater and electrical cords.

Before the end of December 1989, Yuellig submitted his report to Kirby and Associates. Yuellig concluded that the heater caused the fire. Yuellig reasoned that the only heat sources in the area of origin were the heater and the electrical cords. Yet, Yuellig found no indication that the electrical cords were damaged prior to the fire. Yuellig's conclusion was not based on an examination of the mechanical components of the heater. Yuellig's report stated that he would keep the heater and electrical cords for a reasonable amount of time pending a decision for disposition.

The Kentucky State Fire Marshal conducted its own investigation of the fire scene. The fire marshal's report concluded that the fire was caused by a defective extension cord. The fire marshal's conclusion was based on an examination of the fire scene and the extension cord.

Approximately three months after Yuellig submitted his report to Kirby and Associates, he discarded the heater and electrical cords. Yuellig testified that he kept such items for a reasonable amount of time and then discarded them if nobody came to get them. He testified that three months is longer than he normally keeps things. Nevertheless, Yuellig testified that he placed several phone calls to Kirby and Associates for the purpose of determining what it wanted done with the items. He never reached the person to whom he needed to talk, but he left messages to return his calls. Beyond this, the extent of the messages is not known. Nobody ever returned his calls.

According to the affidavits of Maurice Kirby, president of Kirby and Associates, and Robert Wimberg, a State Auto claims examiner, the industry custom and practice is that items from a fire scene will not be destroyed by an investigator without express permission. Yuellig testified that he did not receive express permission to discard the items.

In November 1990, State Auto filed a lawsuit against Lakewood Engineering and Manufacturing Co. ("Lakewood"), the manufacturer of the heater, in Kenton Circuit Court, State of Kentucky. The lawsuit was removed to the United States District Court for the Eastern District of Kentucky.

In early 1991, Lakewood first inquired about the location of the heater. At that time, State Auto advised Lakewood that the heater had been discarded.

In April 1991, this case was consolidated with a wrongful death and personal injury case filed by the Beils' estates.

On or about September 14, 1992, Lakewood filed a motion for summary judgment in both cases requesting that the cases be dismissed pursuant to Rule 37 of the Federal Rules of Civil Procedure due to "the intentional, pre-litigation destruction by an agent of the Plaintiffs of the heater manufactured by the Defendant which the Plaintiffs allege to have been defective." In the alternative, Lakewood requested that plaintiffs be prohibited, under Rule 37, from introducing any evidence that the heater was defective or caused the fire.

On November 19, 1992, the district court held a hearing on the motion. At the hearing, the court stated:

I feel State Auto is grossly negligent, and I'll enter summary judgment against State Auto. The other people, the Beils, are innocent; but on the other hand, it's not fair to let them use this guy, and I'll exclude this witness, but you are free to try to proceed with facts other people observed.... Everybody can proceed on

their own, and like any product case where the product is destroyed, people have to do the best they can, but this is all State Auto's fault. I'll enter summary judgment against them.

It's their agent.

In response to the court, State Auto stated that it was not informed that Yuellig was going to discard the items. To this, the court responded:

You took possession of the heater. It was your obligation to preserve it.

I think you put this on this other fellow who may or may not be reliable, and you are grossly negligent or—or he was grossly negligent or somebody was grossly negligent, and he was your agent.

On November 24, 1992, the district court issued an order consistent with the court's announced intentions from the November 19, 1992, hearing. The order stated:

Soon after delivering this report to Kirby & Associates, Yuellig sought their directions as to whether or not to dispose of the Lakewood heater. He states that he called Kirby on at least two occasions in this regard, but received no response. Yuellig further states that he did not hear from Kirby regarding the heater until approximately one year later.

\* \* \* \* \* \*

In any event, after storing the heater for approximately three months, Yuellig discarded it, along with an attached extension cord. Defendants believe that this extension cord, owned by the Beils, was the actual cause of the fire. Defendants claim that they have been prejudiced by this "intentional, pre-litigation destruction" of evidence, and move for sanctions and summary judgment pursuant to Fed.R.Civ.Pro. 37(d) and 56.

\* \* \* \* \* \*

However, the sanction of dismissal is generally unwarranted unless a court finds bad faith or gross negligence.... This court finds that plaintiff State Automobile Insurance was grossly negligent in its supervision of its agent, Don Yuellig, and

thus finds that dismissal of its action against defendant is appropriate[.]

It is uncontroverted that State Auto was responsible for Yuellig's hire, through its claims adjustment service; that State Auto knew that Yuellig had taken possession of the heater; that Yuellig made repeated calls to Lakewood regarding its disposition; and that he received no response. Moreover, it is uncontroverted that State Auto did not contact Yuellig regarding the heater until approximately one year after he had taken it into his possession. Such behavior is tantamount to gross negligence, given the parties' duty to preserve crucial evidence before trial.

The court stated in a footnote that "the record does not suggest that Yuellig acted "maliciously," or that any of the parties intended to impede discovery or gain an unfair advantage." Finally, the order concluded in bold and capital letters: "THIS IS NOT A FINAL AND APPEALABLE ORDER."

State Auto filed an appeal. State Auto claims that the district court abused its discretion by finding that State Auto was grossly negligent and by finding that Yuellig was its agent. Further, State Auto claims that the district court failed to consider the proper factors in determining whether to dismiss the case. Lakewood claims that this court does not have appellate jurisdiction because the district court did not certify its decision for appeal under Rule 54(b) of the Federal Rules of Civil Procedure. In addition, Lakewood claims that the district court properly considered the factors and, therefore, did not abuse its discretion.

## DISCUSSION

### Appellate Jurisdiction

The United States Courts of Appeals have jurisdiction over appeals from all final decisions of the federal district courts. 28 U.S.C. § 1291. In an action involving multiple parties or multiple claims, the district court, pursuant to Rule 54 of the Federal Rules of Civil Procedure, "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just

reason for delay and upon an express direction for the entry of judgment." Fed. R.Civ.P. 54(b).

■■■ This court has held that consolidated cases remain separate actions. Thus, a case which is disposed on summary judgment is appealable pursuant to 28 U.S.C. § 1291 despite the fact that the case with which it is consolidated has not been disposed. *Lundblad v. Celeste,* 874 F.2d 1097, 1103, *vacated,* 882 F.2d 207 (1989), *reinstated as modified,* 924 F.2d 627 (6th Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991). A case which is disposed on summary judgment does not have to be certified for appeal pursuant to Rule 54. *Id.* The court stated:

"[I]nasmuch as the consolidation of both actions below did not merge the suits into a single cause, it is beyond preadventure [sic] that the trial court's decision dismissing [defendant] and thereby terminating [plaintiff's] action is a final appealable order not requiring further certification pursuant to Fed.R.Civ.P. 54(b)."

*Id.* (quoting *Kraft v. Local Union 327,* 683 F.2d 131, 133 (6th Cir.1982)); *see Knafel v. Pepsi Cola Bottlers, Inc.,* 850 F.2d 1155 (1988) (Two cases were consolidated. One case was appealable pursuant to 28 U.S.C. § 1291 because summary judgment disposed of the case; the other case the was only appealable if certified under Rule 54(b) because summary judgment did not dispose of the entire case.), *appeal after remand,* 899 F.2d 1473 (6th Cir.1990).

■■■ In the instant case, this court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Although this case was consolidated with another, this case has been disposed. Therefore, certification under Rule 54(b) is not necessary. The district court cannot divest this court of its appellate jurisdiction simply by stating that its order is not a final appealable order.

### Rule 37

Rule 37 of the Federal Rules of Civil Procedure is entitled "Failure to Make or Cooperate in Discovery: Sanctions." Subsection (d) allows the court to sanction a party who fails to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection. Subsection (d) states:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

The actions authorized under subsection (b)(2) include dismissing the action.

Rule 37 incorporated Rule 34 of the Federal Rules of Civil Procedure. Rule 34 is entitled "Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes." The rule states in part:

Any party may serve on any other party a request (1) . . . to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

Fed.R.Civ.P. 34(a). The rule also prescribes procedures to follow in making a request for inspection. Fed.R.Civ.P. 34(b).

■■■ A district court's decision to invoke Rule 37 sanctions is reviewed by this court for an abuse of discretion. *Taylor v. Medtronics, Inc.,* 861 F.2d 980, 985 (6th Cir. 1988); *Regional Refuse Systems, Inc. v. Inland Reclamation Company,* 842 F.2d 150, 154 (6th Cir.1988). An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful. *Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1362 (Fed.Cir.1990) (applying 6th Cir-

cuit law) (This case lists four facts; however, two of the factors are substantially the same.), *cert. denied*, 498 U.S. 851, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990).

In deciding whether the district court acted unreasonably, arbitrarily or fancifully, this court has announced several factors that it should consider when deciding whether the district court abused its discretion by imposing sanctions. Among the factors are: "(1) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, (2) whether the dismissed party was warned that failure to cooperate could lead to dismissal, and (3) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Taylor* at 986 (citing *Regional Refuse Systems* at 155).

Dismissal is the sanction of last resort. It should be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault. *Taylor* at 985. Dismissal is an abuse of discretion if the party does not have the ability to comply with the request. *Id.* The dismissed party has the burden of proving that it could not comply with the discovery request. *Id.* at 987. A district court does not abuse its discretion in dismissing a case, "even though other sanctions might be workable, if dismissal is supported on the facts." *Regional Refuse Systems* at 155.

In the instant case, the district court abused its discretion by dismissing the case pursuant to Rule 37(d) because it erroneously applied the rule. Rule 37(d) allows for sanctions in three defined situations: (1) if a party fails to appear at its own deposition after being served, (2) if a party fails to answer or object to interrogatories submitted under Rule 33, and (3) if a party fails to serve a written response to a request for inspection submitted under Rule 34. The only situation that may be applicable to this case is a party's failure to serve a written response to a request for inspection submitted under Rule 34. A request for inspection pursuant to the procedures set out in Rule 34(b) was not made. Moreover, a request for the heater and electrical cords would be outside of the scope of Rule 34 because the rule

is limited to tangible things in the possession, custody, or control of the party upon whom the request is made. The heater and electrical cords were never in State Auto's possession or control during the lawsuit. The heater and electrical cords were discarded in or about March 1991. The lawsuit was not filed until November 1991. Thus, had a request been made, State Auto could have properly complied with Rule 37 by filing a response stating that it could not produce the heater and electrical cords because they had been destroyed and, therefore, were not in its possession, custody, or control.

This court's decision is in no way meant to condone pre-litigation destruction of evidence. The court simply recognizes that Rule 37 is a procedural rule, and like all procedural rules, it governs conduct during the pendency of a lawsuit. Rule 37 does not, nor does any procedural rule, apply to actions that occurred prior to the lawsuit. Such a remedy must be found in the substantive law of the case. For example, several states have laws which shift the burden of proof when a party is responsible for discarding evidence or which allow juries to draw inferences about discarded evidence. This has been done in Kentucky.

In *Welsh v. United States*, one member of this court noted that "the District Court's drawing of inferences adverse to the defendant based on defendant's failure to produce evidence that was within its control finds general support in Kentucky case law." 844 F.2d 1239, 1245 (6th Cir.1988). The rationales for allowing adverse inferences are both evidentiary and deterrent. "The evidentiary rationale springs from the common sense notion that a party with notice of an item's possible relevance to litigation who proceeds nonetheless to destroy it is more likely to have been threatened by the evidence than a party in the same position who does not destroy it[.]" *Id.* at 1246. The deterrent rationale " 'serves as a penalty, placing the risk of an erroneous judgment on the party that wrongfully created the risk.' " *Id.* "Destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the

degrees of negligence to intentionality. The resulting penalties vary correspondingly. Some jurisdictions have created causes of action against intentional spoliators." *Id.* "Some courts assign no adverse evidentiary consequences to destruction of evidence that is unintentional or satisfactorily explained. Others apply a panoply of sanctions against spoliators, including those who prior to litigation or to discovery requests discard evidence they know or should know will be relevant or discoverable." *Id.* The rationales for drawing negative inferences against a defendant who is responsible for pre-litigation destruction of evidence are equally applicable to a plaintiff who is responsible for the destruction.

The unavailability of evidence due to the plaintiff's pre-litigation destruction and the corresponding negative inferences, however, do not *necessarily* mandate dismissing the case or granting summary judgment.[1] Cases are often tried even though a crucial piece of evidence is unavailable. The plaintiff must then rely on other sources of proof to establish what might more easily have been proved if the missing evidence was available. In a product liability case based on a design defect, the plaintiff could demonstrate through expert testimony, without the availability of the specific product, that the product's design was defective; and therefore, each product, including the unavailable product, was defective. Even in product liability cases not based on design defects, the plaintiff is not prohibited from trying to prove its case without the specific product. The district court in the consolidated case brought by the Beils' estate recognized that a case may still proceed against Lakewood despite the unavailability of the evidence. The court did so by allowing the estate to proceed with its case despite the fact that it was prohibited from introducing Yuellig's report.[2]

## CONCLUSION

For the reasons stated above, the decision of the district court is REVERSED.

---

1. Nevertheless, summary judgment may be granted pursuant to Rule 56 or a verdict directed pursuant to Rule 50 of the Federal Rules of Civil Procedure if the district court determines that the defendant is entitled to judgment as a matter of law because the plaintiff is unable, due to the unavailability of the evidence and the negative inferences, to offer evidence sufficient to support its case.

   At oral arguments, counsel for Lakewood suggested that this court could dismiss the case under Rule 56 if the court determined that Rule 37 was inapplicable. We are unable to address this alternate ground for dismissal because it is not properly before the court, as it has not been presented to the district court.

2. *Compare Lee v. Boyle–Midway Household Products, Inc.*, 792 F.Supp. 1001, 1005 (W.D.Pa.1992) ("Under Pennsylvania law, in a case in which plaintiff does not allege a defect present in all of defendant's products, a defendant in a products liability case is entitled to summary judgment when loss or destruction of evidence deprives the defense of the most direct means of countering plaintiff's allegations.").